UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICOLETTE H.,

                           Plaintiff,

         v.

KILOLO KIJAKAZI,[1] Commissioner of
  Social Security,

                           Defendant.
_____

**DECISION and ORDER**

**21-CV-248F**
(**consent**)

APPEARANCES:        LAW OFFICES OF KENNETH HILLER
                                  Attorneys for Plaintiff
                                  KENNETH R. HILLER, of Counsel
                                  6000 North Bailey Avenue
                                  Suite 1A
                                  Amherst, New York  14226

                                  TRINI E. ROSS
                                  UNITED STATES ATTORNEY
                                  Attorney for Defendant
                                  Federal Centre
                                  138 Delaware Avenue
                                  Buffalo, New York  14202
                                         and
                                  ANDREEA LAURA LECHLEITNER
                                  Special Assistant United States Attorney, of Counsel
                                  Social Security Administration
                                  Office of General Counsel
                                  6401 Security Boulevard
                                  Baltimore, Maryland  21235

## JURISDICTION

On March 6, 2023, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

Standing Order (Dkt. 13).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on January 6, 2022 (Dkt. 7), and by Defendant on June 1, 2022 (Dkt. 10).

## BACKGROUND

Plaintiff Nicolette H. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on May 12, 2018, for Social Security Disability Income ("SSDI") under Title II of the Act ("disability benefits").  Plaintiff alleges she became disabled on September 14, 2017, based on lumbar degenerative disc disease, radiculopathy, and chronic history of bilateral foot pain due to vascular surgery.  AR[2] at 42, 217, 220.  Plaintiff's application initially was denied on July 17, 2018.  AR at 42, 117-22.  At Plaintiff's timely request, AR at 123, on November 26, 2019, an administrative hearing ("administrative hearing") was held via videoconference before Administrative Law Judge ("ALJ") Theodore Kim ("the ALJ"), located in Falls Church, Virginia.  AR at 71-100.  Appearing and testifying by telephone at the administrative hearing were Plaintiff, represented by Richard G. Abbott, Esq., and impartial vocational expert George J. Starosta ("the VE"), also appeared and testified.

On March 23, 2020, the ALJ issued a decision denying Plaintiff's claim, AR at 39-58 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at

---

[2] References to "AR" are to the pages of the Administrative Record electronically filed by Defendant on January 6, 2022 (Dkt. 6).

2

207-09.  On December 22, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's Decision that Plaintiff was not disabled, AR at 1-7, thus rendering the ALJ's Decision the Commissioner's final decision.  In denying Plaintiff's request for review, the Appeals Council acknowledged receipt of additional evidence from Plaintiff, which was not exhibited with the rest of the medical evidence either because it did not show a reasonable probability that it would change the outcome of the case or because it did not relate to the period at issue.  AR at 2.[3]  On February 12, 2021, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On January 6, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 7 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 7-1) ("Plaintiff's Memorandum").  On June 1, 2022, Defendant moved for judgment on the pleadings (Dkt. 10) ("Defendant's Motion"), attaching Acting Commissioner's Brief in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 on Social Security Cases (Dkt. 10-1) ("Defendant's Memorandum").  Filed on June 6, 2022, was Plaintiff's Response to the Commissioner's Memorandum in Support and in Further Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 11) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

---

[3] Although not formally "exhibited" in the record as medical evidence, the newly submitted evidence is included and made part of the record.  See AR at 8-33, 59-70.

**FACTS**[4]

Plaintiff Nicolette H. ("Plaintiff"), born August 20, 1968, was 49 years old as of her alleged disability onset date ("DOD") of September 14, 2017, 2017, and 51 years old as of March 23, 2020, the date of the ALJ's Decision.  AR at 42, 54, 76, 217, 240.  Plaintiff lived with her husband and teenage daughter in a single-story house.  AR at 76, 89-90, 230-31, 239

Plaintiff is a high school graduate and attended regular classes in school, but has not completed any specialized training, trade, or vocational school.  AR at 76, 221.  Plaintiff has a driver's license, but for the past two years has limited her driving to a couple of miles twice a week because numbness and tingling in her feet has caused her foot to slip off the brake pedal when her vehicle was stopped.  AR at 88-89, 233.  Plaintiff worked for fifteen years as a ticket machine operator at Off Track Betting, AR at 76, 93, but was laid off in May 2017, then was called back to work and worked part-time for two weeks in June 2017 when her impairments rendered her unable to work.  AR at 77-78, 220.

Plaintiff receives primary care through Highgate Medical Group where her primary care physician is Michael Dlugosz, M.D. ("Dr. Dlugosz").  AR at 383-540.  Plaintiff has been treated for multiple physical impairments including chronic venous insufficiency for which she underwent several surgical procedures performed by Michael A. Vasquex, M.D. ("Dr. Vasquez") with the Venous Institute of Buffalo, Inc. ("VIB"), including transcatheter endovascular obliteration of the left lower great saphenous vein, transcatheter intraoperative ultrasound guided imaging of the left leg, and ultrasound-

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

4

guided chemical ablation with foam left leg varicosities (procedure involving injection of foam solution to treat varicose veins), on April 17, 2015, endovenous microfoam ablation of the left small saphenous vein and left lower great saphenous vein on April 5, 2017, and endovenous microfoam ablation of the right saphenous vein with interoperative ultrasound guided imaging of the right leg on May 5, 2017.  AR at 286-356.  In September 2017, Plaintiff was placed by orthopedic surgeon Christopher Ritter, M.D. ("Dr. Ritter"), and rehabilitation physician David Bagnall, M.D. ("Dr. Bagnall"), both with UBMD Orthopaedics & Sports Medicine, on disability until further notice because of bilateral leg, ankle and foot pain, and has not since worked.  AR at 77-78, 220, 821-24, 832-42.

From November 23 to 24, 2017, Plaintiff was admitted to Erie County Medical Center ("ECMC"), in Buffalo, New York, and her discharge diagnoses included acute chronic megaloblastic anemia (anemia caused by vitamin deficiency, particularly vitamin B9 and B12, attributed to inadequate intake or poor absorption by the lower digestive tract), anxiety, E. coli cystitis (bladder inflammation caused by E. coli bacteria), alcohol dependence with alcohol withdrawal, and transaminitis (elevated liver enzymes) secondary to alcohol withdrawal.  AR at 357.

On August 15, 2018, Plaintiff commenced treatment at DENT Neurological Institute of Buffalo ("DENT"), where she was treated by neurologist Bennett H. Myers, M.D. ("Dr. Myers"), for complaints of bilateral numbness and swelling in her feet, trouble with gait and balance, and low back pain, and returned to Dr. Myers for treatment of dysesthesia (painful, itchy or burning sensation caused by nerve damage), weakness, and imbalance which Dr. Myers suspected may be attributed to Plaintiff's abuse of

alcohol.  AR at 683-705.  On July 10, 2019, Plaintiff was re-evaluated at DENT for complaints of complex regional pain syndrome ("CRPS").  AR at 680-82.

On September 5, 2019, Plaintiff was examined at Excelsior Orthopaedics, LLP, by Adam Burzynski, M.D. ("Dr. Burzynski"), for complaints of left foot pain, especially in the great toe, which Plaintiff attributed to a fall on December 27, 2018.  AR at 102-03.  An X-ray of Plaintiff's left foot showed healed midfoot fractures of the first and second metatarsals.  AR at 101.  Dr. Burzynski commented Plaintiff's foot fractures were healed, and Dr. Burzynski queried whether sesamoiditis (inflammation of sesamoid bones in the ball of the foot and the tendons in which they are imbedded) was a component, and Plaintiff was advised to consult with a podiatrist if the pain in her great toe continued.  *Id*. at 103.

On October 21, 2019, Plaintiff presented to University at Buffalo Neurosurgery ("UB Neurosurgery"), where she was examined by Jaqir Siddiqui, M.D. ("Dr. Siddiqui"), for complaints of numbness, tingling, and discoloration of the bilateral legs.  AR at 8-10.  Dr. Siddiqui diagnosed alcoholic polyneuropathy, CRPS of left lower limb, and pain in the left foot, and recommended Plaintiff undergo a two-lead Nevro thoracic spinal cord simulator trial for her neuropathic and CRPS symptoms.  *Id*.  On February 27, 2020, Plaintiff presented at In Touch Adult Health NPs, P.C., in Amherst, New York ("In Touch"), complaining of chronic pain in her left buttocks through her left lower extremity with peripheral neuropathies in her legs bilaterally, and Plaintiff was assessed with chronic pain syndrome, long term (current) use of opiate analgesic, idiopathic progressive neuropathy, low back pain, radiculopathy in the lumbar region, and CRPS of unspecified lower limb.  AR at 24-33.  On May 21, 2020, Plaintiff returned to UB

Neurosurgery where she again saw Dr. Siddiui.  AR at 13-14.  Plaintiff's diagnosis remained the same and Dr. Siddiqui recommended Plaintiff for a lumbar sympathetic block.  *Id*.

In connection with her disability benefits application, on June 29, 2018, Plaintiff underwent a consultative internal medicine examination by Hongbiao Liu, M.D. ("Dr. Liu"), who diagnosed arthritis, history of syncope, anxiety and depression, and history of alcohol abuse, opining Plaintiff has mild to moderate limitations for prolonged walking, bending, and kneeling.  AR at 568-71.  That same day, Plaintiff also underwent a psychiatric evaluation by psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia"), who diagnosed "other specified anxiety disorder," and alcohol dependence abuse, early remission, opining the results of the evaluation "appear to be consistent with psychiatric and substance abuse problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."  AR at 575-78.  On July 5, 2018, state agency psychological examiner J. Dambrocia, Ph.D. ("Dr. Dambrocia"), reviewed Plaintiff's medical records and opined Plaintiff has medically determinable psychological impairments of depressive, bipolar, and related disorders as well as anxiety and obsessive-compulsive disorders, resulting in only mild restrictions to Plaintiff's ability to interact with others and adapt or manage herself.  AR at 109-11. On July 16, 2018, state agency medical examiner J. Poss, M.D. ("Dr. Poss"), reviewed Plaintiff's medical records and opined Plaintiff could perform work at the light exertional level with occasional postural limitations.  AR at 111-16.

**DISCUSSION**

1. **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2. Disability Determination

Although Plaintiff seeks only SSDI benefits, the definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial

gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry also ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

### 3.     Analysis of Plaintiff's Arguments

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI though June 30, 2022, AR at 44, did not engage in substantial gainful activity ("SGA") since September 14, 2017, Plaintiff's alleged DOD, *id*. at 44-45,[6] and suffers from the severe impairments of degenerative disc disease of the lumbar spine with spondylosis and radiculopathy, peripheral neuropathy, degenerative disc disease of the cervical spine with stenosis, and left foot fractures and osteoarthritis, *id*. at 45, but that other physical conditions with which Plaintiff was diagnosed, including chronic venous hypertension with inflammation in her bilateral lower extremities, lymphedema (build-up of fluid in soft body tissues when the lymph system is damaged or blocked), anemia, hypomagnesemia (low serum magnesium level), hypokalemia (low blood potassium), Raynaud's syndrome without gangrene, syncope (fainting), dysesthesia, arteritis (inflammation of arteries), peripheral vascular disease, CRPS I of bilateral lower extremities, and hypercholesterolemia, as well as Plaintiff's medically determinable mental impairments of major depressive disorder, anxiety, and anorexia, have no more than a minimal effect on Plaintiff's ability to perform basic work activities and, thus, are not severe impairments. *Id*. at 46. The ALJ also found Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 47-48. Despite her impairments, the ALJ found Plaintiff retains the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff can only occasionally push or pull or operate food controls with both lower extremities, requires a cane to ambulate,

---

[6] The court notes that, as the ALJ found, AR at 45, Plaintiff's limited income earned after her asserted DOD did not amount to SGA.

11

can occasionally kneel, crouch, stoop, balance, and crawl, and can occasionally climb stairs and ramps, can never climb ladders, ropes, and scaffolds, can never be exposed to unprotected heights and moving mechanical parts, can tolerate occasional exposure to extreme cold and vibration, and is able to understand, carry-out, and remember simple instructions, and make simple work related decisions.  AR at 48-52.  The ALJ further found Plaintiff is capable of performing her PRW as a paramutual cashier,[7] AR at 52, but also can perform other jobs that exist in the national economy given Plaintiffs age, education, work experience, and RFC including laundry sorter, ticket taker, and usher.  *Id*. at 52-53.  Accordingly, the ALJ found Plaintiff was not disabled, as defined in the Act through the date of the ALJ's Decision.  *Id*. at 54.

    In support of her motion, Plaintiff argues the ALJ erred by failing to identify Plaintiff's CRPS as a severe impairment at the second step ("Step Two") of the five-step sequential analysis and then failing to incorporate any limitations for CRPS into the RFC assessment, Plaintiff's Memorandum at 11-15, and the ALJ's "highly-specific" RFC is not supported by substantial evidence."  *Id*. at 16-19.[8]  In opposition, Defendant argues the ALJ properly evaluated the severity of Plaintiff's impairments, Defendants' Memorandum at 9-12, the evidence Plaintiff submitted to the Appeals Council following the ALJ's Decision provided no basis to change the ALJ's Decision,[9] *id*. at 12-14, and substantial evidence supports the ALJ's findings, *id*. at 14-22.  In reply, Plaintiff argues

---

[7] The court notes that despite determining Plaintiff remains capable of performing her PRW, the ALJ also states, "[t]he claimant is unable to perform the past work due to the skill level required."  AR at 52.  There is no explanation in the record for this apparent inconsistency.
[8] Plaintiff's arguments in support of judgment on the pleadings challenge the ALJ's RFC determination only with regard to her physical impairments.
[9] The court notes Plaintiff does not challenge the Appeals Council's determination that the evidence newly submitted to the Appeals Council either did not pertain to the relevant period of time or would not change the outcome of the appeal.

the deference owed to the ALJ's Decision is "not unbounded" when the ALJ's decision is not supported by substantial evidence in the record, Plaintiff's Reply at 1-2, and Defendant's arguments are largely comprised of "post-hoc rationalizations" that are insufficient to support the ALJ's Decision. *Id*. at 2.

### A. Step Two Error

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's CRPS a severe impairment at Step Two of the five-step sequential analysis, requiring reversal of the ALJ's Decision. Plaintiff's Memorandum at 11-15. In opposition, Defendant argues the ALJ did not err in finding Plaintiff's CRPS was not severe, Defendant's Response at 9-10, but even if it was error, such error was harmless, *id*. at 10-11, and the ALJ also sufficiently accounted for Plaintiff's CRPS by limiting Plaintiff to light work with physical restrictions and requiring only simple work tasks. *Id*. at 11-12.

An ALJ's failure to consider an impairment to be severe is harmless provided in proceeding through the remaining steps of the sequential disability analysis, the ALJ considers the effects of all of the Plaintiff's impairments. *See Ashley O. v. Saul*, 2021 WL 241965, at *5 (W.D.N.Y. Jan. 25, 2021) ("[S]uch error is harmless, however, because the ALJ proceeded beyond step two of the disability analysis and considered the effect of all of the Plaintiff's impairments throughout the remaining steps of the analysis." (citing *Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (the ALJ's error in determining which impairments are severe at step two of the disability analysis is harmless where the ALJ proceeds to evaluate claimant's disability based on such severe impairments through the remaining steps of the sequential analysis))). In the instant case, despite considering Plaintiff's CRPS to be a nonsevere impairment at

Step Two, the ALJ specifically stated that "the residual functional capacity assessment fully accounts for any dysfunction from the claimant's nonsevere impairments." AR at 45. Accordingly, even if the ALJ erred in failing to consider Plaintiff's CRPS to be a nonsevere impairment, such error was harmless and provides no basis for remand.

### B. Highly Specific RFC

Although Plaintiff asserts the ALJ's "highly-specific" RFC is not supported by substantial evidence," Plaintiff's Memorandum at 16, the Plaintiff's argument on this point demonstrates Plaintiff is opposing the ALJ's failure to "tether" the RFC formulation to any specific evidence in the record and, thus, must have relied on his own lay opinion which is not permitted. *Id*. at 16-19 (citing authorities). In opposition, Defendant argues the ALJ does not necessarily rely on his own lay interpretation of the medical evidence whenever an RFC that is not tethered to a medical opinion, but is entitled to consider the medical evidence and other relevant evidence in the record in formulating an RFC which the ALJ did in this case. Defendant's Memorandum at 114-16. Defendant further argues the RFC formulated by the ALJ is supported by substantial evidence in the record. *Id*. at 16-22.

Initially, Plaintiff's argument ignores that Plaintiff bears the burden of establishing her RFC is more restrictive than the ALJ's determination. *See Smith v. Berryhill*, 740 Fed.Appx. 721, 726 (2d Cir. 2018) (denying remand where the plaintiff failed to meet his burden to prove a more restrictive RFC than assessed by the ALJ) (citing 42 U.S.C § 423(d)(5)); *Michael P. V. Commissioner of Soc. Sec.*, 2023 WL 21228, at * 7 (W.D.N.Y. Jan. 3, 2023) (declining to remand and granting the commissioner's motion for judgment on the pleadings where the plaintiff presented no evidence of functional limitations

14

greater than those found by the ALJ). Nor is an ALJ not required to formulate an RFC that perfectly corresponds to a medical opinion in the record; rather, because the RFC is an administrative finding, the ALJ is permitted to "consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination." *Curry v. Comm'r of Soc. Sec.*, 855 Fed.Appx. 46, 48 n. 3 (2d Cir. 2021) (citing 20 C.F.R. §§ 419.927(c)(3), and 416.945(a)). *See also Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources citing in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." (citing *Richardson v. Perales*, 402 U.S. 289, 299 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")).

Even where, as here, the ALJ's RFC determination does not directly correspond to any medical opinion in the record, the RFC determination will be upheld so long as it is supported by the Plaintiff's daily activities, treatment history, and consultative examiner's evaluations. *See Wilson v. Colvin*, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("Furthermore, the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up'"); *Kirkland v. Colvin*, 2016 WL 850909, at * 12 (W.D.N.Y. Mar. 4, 2016) (finding that the ALJ did not err by assessing specific limitations that did not precisely correspond to any medical opinion because the plaintiff's daily activities, treatment history, and consultative examiner's evaluation supported those limitations). In the instant case, the RFC formulated by the ALJ is entirely consistent with the consultative

opinion of Dr. Liu who examined Plaintiff and reported Plaintiff, despite her complaints of "whole body pain, worse pain in the low back and the legs," AR at 568, appeared in no acute distress, *id*. at 569, walks slowly with and without a cane, *id*., could walk on heels and toes with moderate difficulty because of low back pain, *id*., had normal stance, *id*., and although Plaintiff has a cane which she insisted on using when walking outside for balance and to limit pain, Dr. Liu thought the cane was medically unnecessary. *Id*. Plaintiff needed no help changing for the exam or getting on and off the exam table and was able to rise from a chair without difficulty. *Id*. Plaintiff's straight leg raising test was positive bilaterally, *id*. at 570, and she had decreased range of motion ("ROM") in her lumbar spine, *id*., had full ROM of her hips, knees, and ankles bilaterally, without "evident subluxations, contractures, ankylosis, or thickening," stable and nontender joints, and no redness, heat, swelling or effusion." *Id*. Plaintiff's extremities were also without cyanosis (bluish skin discoloration indicating poor circulation or inadequate oxygenation), clubbing or edema, no significant varicosities or trophic changes, nor was muscle atrophy evident. *Id*. Dr. Liu further considered that an X-ray of Plaintiff's lumbar spine taken July 4, 2018, showed relatively well-maintained intervertebral disc spaces and vertebral bodies height, no acute fracture or subluxation, and there was no acute bony abnormality. *Id*. at 572. Dr. Liu diagnosed Plaintiff with arthritis and opined Plaintiff has a mild to moderate limitation for prolonged walking, bending and kneeling. *Id*. at 571. This opinion is entirely consistent with the ALJ's assessment of an RFC limiting Plaintiff to light work[10] with additional postural limitations.

---

[10] As defined by the relevant regulation,

> light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

AR at 48-52.  Further, the ALJ is permitted to rely on the opinion of a consultative examiner provided the opinion is supported by and consistent with other evidence in the record.  *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (consultative physician's report may constitute substantial evidence); *Hairston v. Comm'r of Soc. Sec.*, 2020 WL 516897, at *4 (W.D.N.Y. Jan. 29, 2020) ("It is well-established that '[a] well-supported opinion from a consultative examining physician, a non-examining state agency doctor, and/or a medical expert may ... provide substantial evidence supporting an ALJ's decision.'" (quoting *Cassandra K. v. Comm'r of Soc. Sec.*, 2019 WL 1115673, at *6 (N.D.N.Y. Mar. 11, 2019))), *aff'd sub nom. Hairston-Scott v. Comm'r of Soc. Sec.*, 2021 WL 3777581 (2d Cir. Aug. 26, 2021).  Here, Dr. Liu's opinion is fully supported by Dr. Liu's physical examination of Plaintiff's conditions, X-rays of Plaintiff's lumbar spine, and Plaintiff's demonstrated ability to successfully ambulate.  *See* AR at 568-70, 572.

Other evidence in the record also supports the ALJ's RFC assessment including, for example, medical reports that Plaintiff, despite diminished strength and ROM in her spine and lower extremities caused by degenerative disc disease, peripheral neuropathy, and left foot fracture, displayed a normal gait and full or almost full strength and ROM in her lower extremities.  *See* AR at 465-67 (November 7, 2017, report of annual physical documenting Plaintiff has no clubbing, cyanosis or edema in her extremities, that she was drinking because she was off work and had both good days and bad days since she quit drinking, Plaintiff walked with a normal gait, spinal contour

---

        category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . .

20 C.F.R. § 416.967(b).

was normal, and ROMs were "full with no discomfort"); 719-20 (March 7, 2019, report of Dr. Burzynski who evaluated for Plaintiff's complaints of left ankle/foot pain finding "significant point tenderness over her midfoot," which was to be treated "nonoperatively" and Plaintiff was "to continue walking in a regular shoe to tolerance"), and 740-43 (November 7, 2019 examination by PCP Dr. Dlugosz who reported Plaintiff "walks with a normal gait . . . . spinal contour is normal.  ROM: full with no discomfort.").  Moreover, as Defendant argues, an opinion like Dr. Liu's assessing mild to moderate limitations in physical functioning "is consistent with the demands of light work."  Defendant's Memorandum at 18-19 (citing *Snyder v. Saul*, 840 Fed.Appx. 641, 643 (2d Cir. 2021) (moderate physical limitations consistent with the ability to perform light work)).

As for activities of daily living, the evidence also establishes that despite her impairments, Plaintiff reported engaging in childcare on a daily basis, watching television, reading books, and socializing with friends.  AR at 569, 577.  Plaintiff is able to dress, bathe, and groom herself, manage money, and enjoys going out to lunch and engaging in social media.  AR at 577.  *See Kirkland*, 2016 WL 850909, at * 12 (ALJ's assessment of specific limitations was supported by the plaintiff's daily activities, treatment history, and consultative examiner's evaluation supported those limitations).

In short, the evidence in the record establishes at most that it is susceptible to more than one rational interpretation, including the ALJ's Decision that Plaintiff is not disabled under the Act.  *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) ("Under this 'very deferential standard of review [applicable to actions

challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).  Further, the Supreme Court recently reaffirmed that the threshold for substantial evidence "is not high . . . .   It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, __ U.S. __; 139 S.Ct. 1148, 1154 (2019) (internal citation and quotation marks omitted).  Indeed, as noted, see Discussion, *supra*, at 7, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original).  Accordingly, the ALJ's decision that Plaintiff could perform a limited range of light work such that Plaintiff was not disabled is supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 7) is DENIED; Defendant's Motion (Dkt. 10) is GRANTED.  The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     March 21, 2023
           Buffalo, New York